UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 19-204** |
| **TERRAN WILLIAMS, JAVONTA DOLEMAN, TYRONE BOVIA** | **SECTION "H"** |

### ORDER AND REASONS

Before the Court are Defendants' Terran Williams and Javonta Doleman's Motion to Suppress (Doc. 1153); and Tyrone Bovia's Motion to Suppress (Doc. 1154). Oral Argument was held on January 16, 2025. For the following reason, the Motions are **DENIED IN PART** and set for evidentiary hearing in part as outlined herein.

### BACKGROUND

Defendants Terran Williams, Javonta Doleman, and Tyrone Bovia face multiple charges arising out of alleged gang activity by a criminal organization known as the "Byrd Gang" in and around New Orleans, Louisiana, including charges relating to a Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy, drug trafficking conspiracy, firearms conspiracy, and murder. The Second Superseding Indictment alleges fifty overt acts in the RICO conspiracy between 2014 and 2020. Twenty-one defendants were

1

initially charged in this matter and only Williams, Doleman, and Bovia remain for trial.

Defendants have each moved to suppress evidence and statements relating to some of the fifty Overt Acts. Specifically, Defendants Williams and Doleman have moved to suppress evidence obtained during *Terry* stops relating to Overt Acts 14 and 30, arguing that officers did not have reasonable suspicion to initiate the stops in violation of the Fourth Amendment. Bovia separately moves to suppress evidence and statements in relation to Overt Acts 10, 18, 29, 31, 34, 37, and 44, arguing that they were obtained in violation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights. This Court will consider each argument in turn.

## **LEGAL STANDARD**

Evidentiary hearings on motions to suppress are not granted as a matter of course.[1] Rather, "an evidentiary hearing is required 'when the defendant alleges sufficient facts which, if proven, would justify relief.'"[2]

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' but 'contains no provision expressly precluding the use of evidence obtained in violation of its commands.'"[3] Nonetheless, Supreme Court

---

[1] United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983).
[2] United States v. Mergist, 738 F.2d 645, 648 (5th Cir. 1984) (quoting *Harrelson*, 705 F.2d at 737).
[3] Herring v. United States, 555 U.S. 135, 139 (2009) (quoting Arizona v. Evans, 514 U.S. 1, 10 (1995)). "It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment." United States v. Jones, 565 U.S. 400, 404 (2012) (citing United States v. Chadwick, 433 U.S. 1, 12 (1977)).

precedent has "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial."[4] "This rule—the exclusionary rule—is a 'prudential doctrine' . . . created by this Court 'to compel respect for the constitutional guaranty.'"[5] The purpose of the exclusionary rule is "to safeguard Fourth Amendment rights . . . through its deterrent effect."[6]

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights."[7] When the Government performs a warrantless search or seizure, however, the burden shifts to the Government to prove by a preponderance of the evidence that the search or seizure was constitutional.[8]

## LAW AND ANALYSIS

### I. Doleman and Williams's Motion to Suppress

Defendants were involved in *Terry* stops on April 22, 2016 and February 4, 2017. Each of these incidents is included in the Second Superseding Indictment as an Overt Act supporting the RICO conspiracy charge. Defendants ask the Court to suppress all evidence obtained during these stops, arguing that officers did not have reasonable suspicion to initiate them. As a

---

[4] *Herring*, 555 U.S. at 139.
[5] Davis v. United States, 554 U.S. 229, 236 (2011) (citations omitted).
[6] United States v. Calandra, 414 U.S. 338, 348 (1974).
[7] United States v. Guerrero–Barajas, 240 F.3d 428, 432 (5th Cir. 2001) (citing United States v. Roch, 5 F.3d 894, 897 (5th Cir. 1993)); *see also* United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977).
[8] United States v. McKinnon, 681 F.3d 203, 207 (5th Cir. 2012) (citing *Guerrero–Barajas*, 240 F.3d at 428).

3

threshold matter, the Government argues that Defendants have waived their rights to raise Fourth Amendment challenges to the stops at issue because they pleaded guilty to the state charges resulting therefrom. The Court will address this threshold issue first before moving on to consider the merits of Defendants' Fourth Amendment challenges.

### A. The Effect of Guilty Pleas on Fourth Amendment Challenges

It is undisputed that Defendants knowingly and voluntarily pleaded guilty in state court to charges arising out of the stops at issue, waiving their Fourth Amendment rights, and did not challenge the convictions on appeal or collaterally. The Government argues that Defendants have therefore waived their rights to raise Fourth Amendment challenges to the stops here. This presents what is apparently an issue of first impression in this circuit: whether a defendant who enters a guilty plea in state court can raise Fourth Amendment challenges to the admissibility of evidence arising out of the same facts in a later federal prosecution.

In support of its argument that Defendants cannot now bring Fourth Amendment challenges, the Government relies on the Supreme Court's decision in *Tollett v. Henderson*.[9] There, in considering whether a defendant can bring a federal habeas claim for constitutional violations after pleading guilty, the Supreme Court stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional

---

[9] Tollett v. Henderson , 411 U.S. 258, 267 (1973).

> rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.[10]

The Government argues, therefore, that under *Tollett*, Defendants waived their Fourth Amendment rights when they pleaded guilty to the underlying offenses.[11] The Supreme Court has explained, however, that *Tollett* does not support a broad "waiver" of Fourth Amendment rights.[12] In *Haring v. Prosise*, the Court explained that "decisions in *Tollett* and the cases that followed simply recognized that when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized."[13] Therefore, the reasoning of *Tollett* "does not rest on any notion of waiver, but rests on the simple fact that the claim is irrelevant to the constitutional validity of the conviction."[14] In sum, a guilty plea is not "a 'waiver' of antecedent Fourth Amendment claims that may be given effect outside the confines of the

---

[10] *Id.*

[11] The Court notes that even assuming that the issue should be considered under a theory of waiver, it is well-settled that a waiver must be knowing and voluntary. *United States v. Keele*, 755 F.3d 752, 754 (5th Cir. 2014) (stating that to determine the validity of a waiver the court should consider "whether the waiver was knowing and voluntary and whether, under the plain language of the plea agreement, the waiver applies to the circumstances at issue."). While Defendants' knowingly and voluntary guilty pleas waived their rights to bring Fourth Amendment challenges in their state court cases, they could not have knowingly waived those rights for a future federal prosecution of which they were unaware. *See* United States v. Farmer, 770 F.3d 1363, 1366–67 (10th Cir. 2014).

[12] United States v. Gregg, 463 F.3d 160, 163 (2d Cir. 2006).

[13] Haring v. Prosise, 462 U.S. 306, 320–21 (1983).

[14] *Id.*

criminal proceeding."[15] A guilty plea "simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established."[16]

In *Haring v. Prosise*, the Supreme Court considered whether a defendant's guilty plea foreclosed him from challenging the legality of the search upon which his conviction was based in a later § 1983 action.[17] There, the defendant pleaded guilty to manufacturing a controlled substance after police officers found incriminating evidence during a search of his apartment.[18] He subsequently sued the officers for violating his Fourth Amendments rights under § 1983 during the search.[19] The officers argued his guilty plea precluded him from raising a Fourth Amendment claim in his § 1983 case.[20] The Court found that, pursuant 28 U.S.C. § 1738, which generally requires federal courts to give preclusive effect to state court judgments if the courts of the state from which the judgments emerged would do so, the issue should be considered under state law collateral estoppel principles.[21] It held that collateral estoppel would not apply under Virginia law to prevent the defendant from raising Fourth Amendment challenges to the legality of the search in his § 1983 case

---

[15] *Id.*
[16] Menna v. New York, 423 U.S. 61 (1975).
[17] *Prosise*, 462 U.S. at 312.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*

6

because the issue had not been actually litigated in the prior criminal proceeding and was not necessary to support the judgment therein.[22]

> Indeed, a determination that the search of [the defendant's] apartment was illegal would have been entirely irrelevant in the context of the guilty plea proceeding. Neither state nor federal law requires that a guilty plea in state court be supported by legally admissible evidence where the accused's valid waiver of his right to stand trial is accompanied by a confession of guilt.[23]

In so holding, the Court rejected the argument that the defendant "should be barred from litigating an issue that was never raised, argued, or decided, simply because he had an opportunity to raise the issue in a previous proceeding."[24] It explained that a guilty plea does not constitute an admission that there were no Fourth Amendment violations in the stop or search underlying the charge.[25] It also explained that there are many reasons why a defendant might plead guilty and the decision not to raise Fourth Amendment challenges cannot be "regarded as a concession of any kind that a Fourth Amendment evidentiary challenge would fail."[26]

In *United States v. Gregg*, the Second Circuit applied the reasonings of *Tollett* and *Prosise* to the issue now before this Court.[27] Specifically, it considered whether the defendant's "plea of guilty to the state charge of criminal impersonation effectively waived any Fourth Amendment challenges to the subsequent federal felon-in-possession charge stemming from the same

---

[22] *Id.*
[23] *Id.* at 316.
[24] *Id.* at 318.
[25] *Id.*
[26] *Id.* at 319.
[27] *Gregg*, 463 F.3d at 163.

7

stop and arrest."[28] In the stop at issue, police observed a red light illuminate as the defendant swiped his Metrocard at the turnstile, indicating that he was using a reduced fare or "disability Metrocard."[29] "Noticing Gregg appeared neither elderly nor disabled, the officers inquired as to whose Metrocard he was using. Gregg produced his mother's disability Metrocard, and he was arrested for the offense."[30] During the arrest process, officers discovered a firearm concealed on the defendant's person.[31] The defendant pleaded guilty to a state charge of criminal impersonation in the second degree, and a federal grand jury subsequently returned an indictment against the defendant on one count of being a felon in possession of a firearm.[32] The defendant moved to suppress both the gun and certain statements he made to the police at the time of his arrest, arguing that the police did not have reasonable suspicion for the stop.[33]

In reliance on *Tollett* and *Prosise*, the Second Circuit found that "the preclusive effect of a guilty plea entered in state court upon subsequent federal proceedings is determined on the basis of collateral estoppel and the full faith and credit statute."[34] The court held that the defendant should not have been barred under collateral estoppel principles from challenging the seizure of the gun on Fourth Amendment grounds where "legality of the firearm seizure simply was not at issue when Gregg pleaded guilty to criminal

---

[28] *Id.*
[29] *Id.*
[30] *Id.* at 166.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.* at 165.

8

impersonation."[35] The court held that "the plea conclusively establishes his factual guilt on the impersonation" but that his plea did not affect his challenge to "law enforcement's seizure of the firearm after the recovery of the misused Metrocard. Therefore, the validity of Gregg's criminal impersonation conviction could not be affected by the alleged Fourth Amendment violations he asserted on the federal felon-in-possession charge."[36]

The Second Circuit again revisited the issue in *United States v. Jones*.[37] There, the defendant faced child pornography charges in federal court.[38] Prior thereto, the defendant had pleaded guilty to child pornography charges in state court, and the Government sought to use evidence obtained in that earlier state investigation during his federal trial.[39] The defendant moved to suppress that evidence, arguing that the search warrant violated the Fourth Amendment.[40] The Second Circuit again looked to state collateral estoppel law to determine whether the defendant could bring a Fourth Amendment challenge.[41] It held that, under Tennessee law, the defendant would not be precluded from challenging the state court warrants because the issues raised in the motion to suppress had not been actually litigated or decided in the prior state case.[42]

Similarly, in *United States v. Farmer*, the Tenth Circuit considered whether the district court should have considered the illegality of a search that

---

[35] *Id.* at 166.
[36] United States v. Jones, 43 F.4th 94 (2d Cir. 2022).
[37] *Id.* at 100.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.* at 102–05.
[42] *Id.* at 105.

9

resulted in an unlawful weapons possession charge before allowing it in as evidence pursuant to Federal Rule of Evidence 404(b).[43] There, the defendant faced a charge of possession of a firearm by a convicted felon.[44] The Government sought to present evidence pursuant to Rule 404(b) that the defendant had previously been found in unlawful possession of another firearm during the search of a motel room.[45] The defendant pleaded guilty to that charge in state court.[46] The defendant argued that the Rule 404(b) evidence should be suppressed because the search of the motel room had been unlawful.[47] The court, applying *Tollett* and *Prosise*, held that: "By pleading guilty to the state offense, [Defendant] Farmer made a factual admission in that case that he committed the charged state offense, thereby waiving any Fourth Amendment claim that the state illegally seized his gun as evidence in that state prosecution."[48] "But Farmer's guilty plea did not waive his right to challenge the validity of the search underlying his state conviction *in other contexts*."[49] "The district court, therefore, erred in refusing to consider whether that 2010 search was lawful before admitting Rule 404(b) evidence of the gun discovered in Farmer's motel room during that search."[50]

This Court finds the analyses of the Second and Tenth Circuits compelling in answering the question before it. As in those cases, this Court

---

[43] *Farmer*, 770 F.3d at 1366–67.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.* at 1366
[50] *Id.* at 1367.

10

finds it appropriate to follow the Supreme Court's reasoning *Prosise*. This Court sees no persuasive reason to distinguish between the preclusive effect of a guilty plea in a subsequent § 1983 action and in a subsequent prosecution. The Defendants' guilty pleas established their factual guilt as to those state charges, but they did not waive their rights to raise Fourth Amendment challenges to the introduction of the evidence collected in connection with those charges in other contexts. Instead, pursuant 28 U.S.C. § 1738, the Court will give the state court judgments the same preclusive effect as would be given by the courts of the state in which the judgments were entered.

Accordingly, the Court now considers whether, under Louisiana law, Defendants' guilty pleas in state court preclude them from raising Fourth Amendment challenges to the admissibility of evidence arising out of the same stops in this federal prosecution. In Louisiana, collateral estoppel means that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in a subsequent lawsuit."[51] "When a 'fact is not necessarily determined in a former trial, the possibility that it may have been does not prevent re-examination of that issue.'"[52] It is undisputed that Defendants did not raise Fourth Amendment challenges to the stops at issue in their prior state cases, and therefore, those issues have not been actually litigated or determined by the state court.[53] Accordingly, collateral estoppel does not apply to prevent

---

[51] State v. Littleton, 436 So. 2d 500, 504 (La. 1983).

[52] State v. Picot, 2009 WL 10297504 (La. App. 4 Cir. 2009).

[53] The Court also notes that in *State v. Doucet*, the Louisiana Supreme Court suggested that even if Defendants had raised the suppression issue in state court, they still would not be precluded from raising them here. 359 So. 2d 1239, 1247 (La. 1977). It held that the doctrine of collateral estoppel in criminal cases is based on the Fifth Amendment

11

Defendants from raising those challenges now. Having decided that Defendants can proceed with their Fourth Amendment challenges, the Court now considers each in turn.

## B. Overt Act 14: April 22, 2016 Stop

On April 22, 2016, officers approached a vehicle after observing a man leaning into the window in a high crime area. Doleman was found in the backseat with drugs and a stolen firearm. He pleaded guilty to a charge of possession of heroin in state court as a result of the stop. Doleman argues that observing a man leaning into a car window does not create reasonable suspicion for the stop.

"A temporary, warrantless detention of an individual constitutes a seizure for Fourth Amendment purposes and must be justified by reasonable suspicion that criminal activity has taken or is currently taking place; otherwise, evidence obtained through such a detention may be excluded."[54] A seizure must be "justified at its inception," and "a seizure occurs when an officer objectively manifests an intent to restrain the liberty of an individual through either use of physical force or a show of authority."[55] Courts "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing."[56] Officers are permitted to "draw on their own experience and

---

protection against double jeopardy and therefore does not apply when double jeopardy considerations are not involved. *Id.* It held that even where evidence was suppressed in a state case as the result of an unlawful search, collateral estoppel did not apply to prevent re-litigation of the issue in a later state case. *Id.*

[54] United States v. Garza, 727 F.3d 436, 440 (5th Cir. 2013).
[55] United States v. Wright, 57 F.4th 524, 530–31 (5th Cir. 2023).
[56] United States v. Arvizu, 534 U.S. 266, 273 (2002).

specialized training to make inferences from and deductions about the cumulative information available to them."[57]

Here, Defendant has alleged "sufficiently definite, specific, detailed, and nonconjectural" facts that call into question whether there was reasonable suspicion to initiate the stop.[58] Accordingly, an evidentiary hearing is "necessary to receive evidence on an issue of fact."[59] The Court held an evidentiary hearing on this stop on January 16, 2025, and left the issue open for a continuation hearing set for February 14, 2025.[60]

### C. Overt Act 30: February 4, 2017 Stop

On February 4, 2017 at 12:30 a.m., officers conducted a stop of a vehicle with blacked out windows that was parked under an overpass. The police report indicates that the stop was a "suspicious person stop" but also that the officers observed some unnamed violation that triggered the stop. Defendants Doleman and Williams were found in the vehicle with drugs and stolen firearms. Both Defendants pleaded guilty to illegal possession of stolen firearms as a result of the stop. Defendants argue that the officers did not have reasonable suspicion to initiate the stop. The Government does not offer any argument in defense. From the evidence before it, this Court cannot find that officers had "a particularized and objective basis for suspecting legal wrongdoing" when the stop was initiated.[61] Because the Court finds that

---

[57] *Id.*
[58] United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983).
[59] *Id.*
[60] The Court accommodated an earlier hearing on this issue in light of witness travel concerns.
[61] *Id.*

13

Defendants have alleged sufficient facts which, if proven, would justify relief, an evidentiary hearing is set for February 14, 2025 on this claim.

## II. Bovia's Motion to Suppress

In his Motion to Suppress, Defendant Tyrone Bovia moves to suppress evidence and statements made in violation of his Fourth, Fifth, Sixth and Fourteenth Amendment Rights. Each of his arguments relate to one of the Overt Acts alleged in the Second Superseding Indictment in support of the RICO conspiracy charge. This Court will consider each in turn.

### A. Overt Act 10: February 2, 2016 Stop

On February 2, 2016, officers conducted a traffic stop of a vehicle within which Bovia was a passenger, purportedly because they observed that Bovia, the front-seat passenger, was not wearing a seatbelt. Defendant contends that the officer's justification for the stop is dubious where the stop was made at 1:00 a.m. and the officer was following behind the car in which Bovia was a passenger. Bovia pleaded guilty to possession of marijuana arising out of the stop.

Here, the Government reasserts its argument that Defendant's guilty plea waives of his right to assert Fourth Amendment challenges to the stop. Just as discussed above, however, the issue of the constitutionality of the stop was never actually litigated or decided by the state court, and Defendant is therefore not estopped from asserting it here.

Defendant has alleged "sufficiently definite, specific, detailed, and nonconjectural" facts that call into question whether there was reasonable

14

suspicion to initiate the stop.[62] Accordingly, an evidentiary hearing is "necessary to receive evidence on an issue of fact."[63] An evidentiary hearing is set for February 14, 2025 on this claim.

## B. Overt Act 18: July 18, 2016 Warrantless Entry into 1024 Tensas Drive

On July 18, 2016, patrol officers observed a man smoking a marijuana cigarette outside of an apartment. Upon approaching him, the man entered the apartment and locked the deadbolt. The officers forced entry into the apartment, detained several people, and performed a protective sweep revealing several bags of marijuana. A search warrant was then obtained during the execution of which six firearms were located. Defendant Bovia was present in the apartment.[64]

Defendant argues that there were no exigent circumstances for the warrantless search. Warrantless searches and seizures inside a home are presumptively unreasonable under the Fourth Amendment.[65] "[T]his presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is reasonableness."[66] "The exigent-circumstances exception applies where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate."[67]

---

[62] United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983).
[63] *Id.*
[64] Defendant Doleman was also present, but it is undisputed that he does not have standing to raise Fourth Amendment challenges to the search.
[65] Kentucky v. King, 563 U.S. 452, 459 (2011).
[66] *Id.* (citing Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (quotations omitted).
[67] United States v. Menchaca-Castruita, 587 F.3d 283, 289 (5th Cir. 2009).

15

"It permits, for instance, the warrantless entry of private property when there is a need to provide urgent aid to those inside, when police are in hot pursuit of a fleeing suspect, and when police fear the imminent destruction of evidence."[68] "[O]fficers may . . . conduct a warrantless search when they have probable cause to believe that failure to act would result in imminent destruction of evidence."[69] The burden of establishing exigent circumstances lies with the Government.[70]

The Court agrees that it is unclear from the evidence before it what exigent circumstances necessitated the warrantless entry into 1024 Tensas Drive. The police report provides only that officers observed a man smoking a marijuana cigar and that he retreated into an apartment upon their approach. Accordingly, an evidentiary hearing is "necessary to receive evidence on an issue of fact."[71] An evidentiary hearing is set for February 14, 2025 on this claim.[72]

In addition, the Government argues that Bovia does not have standing to challenge the search because he has not established that he resided at the residence. The police report suggests that the residence was his mother's home. A defendant asserting a Fourth Amendment violation has the burden to show

---

[68] Birchfield v. North Dakota, 579 U.S. 438, 456 (2016).
[69] Missouri v. McNeely, 569 U.S. 141, 149 (2013).
[70] *Id.*
[71] *Id.*
[72] The Court notes that the Government filed a supplemental brief arguing that although Defendant's arguments focus on whether there was exigency to justify a warrantless search, officers subsequently obtained a warrant and evidence was seized pursuant to that warrant. Doc. 1219. However, Defendant has not at this time raised any arguments regarding the invalidity of the warrant and therefore the Court does not address these issues.

16

"a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action."[73] "[A]n overnight guest may claim the protection of the Fourth Amendment, but a visitor merely legitimately on the premises cannot."[74] The Court finds that the issue of Defendant's standing to bring this challenge shall also be addressed at the evidentiary hearing.

### C. Overt Act 29: January 31, 2017 Search Warrant

On January 31, 2017, two young men were shot and killed outside of an Edna Karr school basketball game. The Government subsequently obtained a search warrant relating to five cell phones that were connected to the incident and associated with Bovia, Williams, and Doleman. Bovia conclusively argues that there was not probable cause for this search warrant. The Government responds that the search warrant at issue did not result in the production of any data, and thus there is nothing to suppress. Defendant's Motion as to the January 31, 2017 cell phone search warrant is therefore **DENIED AS MOOT**.

### D. Overt Act 31: February 8, 2017 Arrest in Sulphur, LA

On February 8, 2017, an officer conducted a traffic stop after observing a sedan traveling "on the inside lane of travel despite having open lanes to the right" in violation of state law.[75] After the car was stopped, the driver consented to a search of the vehicle. Bovia was arrested for possession of a stolen firearm and drug paraphernalia found during the voluntary search of the vehicle. Defendant contends that the consent to search was involuntary.

---

[73] United States v. Salemi-Nicoloso, 353 F. Supp. 3d 527, 536 (N.D. Miss. 2018).
[74] United States v. Rios-Davila, 530 F. App'x 344, 347 (5th Cir. 2013).
[75] Doc. 1164-3.

Consent to a search is determined based on the totality of the circumstances. The Fifth Circuit has advised that courts look at six factors:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.[76]

The officer's report indicates that the driver of the vehicle twice consented to the search even after being informed that he had the right to refuse. There is no indication in the report that any coercion took place. Further, the report indicates that the driver was unaware that a firearm was in the vehicle's trunk when he consented to the search. "Consent is more likely to be voluntary when the defendant did not know incriminating evidence would be found."[77] Defendant has not presented any additional evidence to call the voluntariness of the consent to search into question. Accordingly, Defendant has not shown that suppression is warranted. Defendant's Motion is **DENIED** as to the February 8, 2017 traffic stop.

### E. Overt Act 34: May 3, 2017 Shooting at Bern Mas Apartments

In discovery, the Government produced a clip of a custodial interrogation of Defendant Bovia. Defendant alleged that he did not waive his *Miranda* rights in connection with the statements given therein because that portion of the interrogation was inadvertently omitted from the clip. The Government produced the full video in February 2024. The video shows Defendant receiving

---

[76] United States v. Alkheqani, 78 F.4th 707, 720 (5th Cir. 2023).
[77] United States v. Medina, 473 F. Supp. 3d 720, 731 (W.D. Tex. 2020).

his rights and affirming his understanding. Accordingly, this issue is **DENIED AS MOOT**.

### F. Overt Act 37: August 11, 2017 Arrest on Simon Bolivar Ave.

On August 11, 2017, officers attempted to perform a traffic stop after running a license plate and learning that it was registered to a different vehicle. The vehicle gave chase and ultimately crashed into a concrete retaining wall. Defendant Bovia was a rear passenger in the vehicle. Firearms, ammunition, cocaine, and drug paraphernalia were discovered in the vehicle. Although Defendant was prosecuted on charges related to the stop, the charges were ultimately dismissed.

Defendant offers only a conclusory argument that the stop and seizure were unlawful. Certainly, reasonable suspicion existed to initiate the stop after officers learned that the license plate on the vehicle was registered to a different vehicle. Further, officers had both reasonable suspicion and probable cause to initiate a stop cause as a result of the subsequent flight from the officers. Defendant has not presented any facts that call into question whether there was reasonable suspicion to initiate the stop. Accordingly, his Motion to Suppress is **DENIED** as to the August 11, 2017 stop.

### G. Overt Act 44: September 4, 2019 S. Claiborne Shooting

After it was determined that Defendant Bovia lied about the circumstances in which he and his one-year-old son obtained gunshot graze wounds, Defendant's cell phone was confiscated and a search warrant was obtained for his cell phone account. Defendant asks the Court to suppress evidence obtained pursuant to the search warrant. The Government contends that it is not in possession of any cell records related to this event and that it

does not intend to use any at trial. Accordingly, this request is **DENIED AS MOOT**.

## CONCLUSION

For the foregoing reasons, the Motions are **DENIED IN PART** and set for evidentiary hearing in part as outlined herein.

New Orleans, Louisiana this 13th day of February, 2025.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**