UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 19-204** |
| **TERRAN WILLIAMS, JAVONTA DOLEMAN, TYRONE BOVIA** | **SECTION "H"** |

### ORDER AND REASONS

Before the Court are Defendants' Terran Williams and Javonta Doleman's Motion to Suppress (Doc. 1153); and Tyrone Bovia's Motion to Suppress (Doc. 1154). An evidentiary hearing was held on January 16, 2025 and February 14, 2025. For the following reasons, Terran Williams and Javonta Doleman's Motion to Suppress is **DENIED**, and Tyrone Bovia's Motion to Suppress is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

This matter arises out of alleged gang activity by a criminal organization known as the "Byrd Gang" in and around New Orleans, Louisiana, between January 2014 and August 2021. Twenty-one defendants were initially charged in this matter and only Terran Williams, Javonta Doleman, and Tyrone Bovia remain for trial. Each Defendant is charged in a Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy, a drug trafficking conspiracy,

1

and a firearms conspiracy. The RICO charge lists 50 Overt Acts, including instances of drug distribution, firearm possession, arrests, shootings, and murders. The Government alleges that the Byrd Gang controlled the drug trade in a certain area of the city through various acts of violence.

Defendants have each moved to suppress evidence and statements relating to some of the 50 Overt Acts. Specifically, Defendants Williams and Doleman have moved to suppress evidence obtained during *Terry* stops relating to Overt Acts 14 and 30, arguing that officers did not have reasonable suspicion to initiate the stops in violation of the Fourth Amendment. The Court set the Motion for an evidentiary hearing, which was held on January 16, 2025 and February 14, 2025.

Bovia separately moved to suppress evidence and statements in relation to Overt Acts 10, 18, 29, 31, 34, 37, and 44, arguing that they were obtained in violation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights. This Court previously denied all but two of those motions.[1] Only his Fourth Amendment challenges to Overt Acts 10 and 18 remain and were addressed in an evidentiary hearing held on February 14, 2025. The Court considered the testimony, evidence, and arguments of counsel presented at the evidentiary hearing and enters the following findings of fact.

## LEGAL STANDARD

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

---

[1] Doc. 1225.

seizures,' but 'contains no provision expressly precluding the use of evidence obtained in violation of its commands.'"[2] Nonetheless, Supreme Court precedent has "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial."[3] "This rule—the exclusionary rule—is a 'prudential doctrine' . . . created by this Court 'to compel respect for the constitutional guaranty.'"[4] The purpose of the exclusionary rule is "to safeguard Fourth Amendment rights . . . through its deterrent effect."[5]

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights."[6] When the Government performs a warrantless search or seizure, however, the burden shifts to the Government to prove by a preponderance of the evidence that the search or seizure was constitutional.[7]

## LAW AND ANALYSIS

### I. Doleman and Williams's Motion to Suppress

Doleman and Williams raise Fourth Amendment challenges to two *Terry* stops relating to Overt Acts 14 and 30. "A temporary, warrantless detention

---

[2] Herring v. United States, 555 U.S. 135, 139 (2009) (quoting Arizona v. Evans, 514 U.S. 1, 10 (1995)).
[3] *Id.*
[4] Davis v. United States, 554 U.S. 229, 236 (2011) (citations omitted).
[5] United States v. Calandra, 414 U.S. 338, 348 (1974).
[6] United States v. Guerrero–Barajas, 240 F.3d 428, 432 (5th Cir. 2001) (citing United States v. Roch, 5 F.3d 894, 897 (5th Cir. 1993)); *see also* United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977).
[7] United States v. McKinnon, 681 F.3d 203, 207 (5th Cir. 2012) (citing *Guerrero–Barajas*, 240 F.3d at 428).

3

of an individual constitutes a seizure for Fourth Amendment purposes and must be justified by reasonable suspicion that criminal activity has taken or is currently taking place; otherwise, evidence obtained through such a detention may be excluded."[8] A seizure must be "justified at its inception" and "occurs when an officer objectively manifests an intent to restrain the liberty of an individual through either use of physical force or a show of authority."[9] Courts "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing."[10] Officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them."[11]

### A. Overt Act 14: April 22, 2016 Stop

On January 16, 2025, the Court held an evidentiary hearing on the April 22, 2016 stop.[12] There, Officer Paul Carmouche testified that on April 22, 2016 at 2:00 a.m., he was patrolling a high crime area when he observed two men exit a house and approach a waiting vehicle. One of the men leaned his entire upper body into the rear passenger window of the waiting vehicle. Based on his training, Officer Carmouche believed this behavior to be consistent with a hand-to-hand drug transaction. He testified that the position of the man's body leaning far into the window belied other innocent explanations for the

---

[8] United States v. Garza, 727 F.3d 436, 440 (5th Cir. 2013).
[9] United States v. Wright, 57 F.4th 524, 530–31 (5th Cir. 2023).
[10] United States v. Arvizu, 534 U.S. 266, 273 (2002).
[11] *Id.*
[12] The Court accommodated an earlier hearing on this issue in light of witness travel concerns.

4

interaction, such as giving someone a ride. At that point, Officer Carmouche turned his vehicle around and activated his lights.

The Court finds here that there was reasonable suspicion for the stop and no Fourth Amendment violation occurred. Officer Carmouche observed individuals in a high crime area in the middle of the night engaging in behavior that his experience taught him was consistent with a drug sale. Thus, he had "a particularized and objective basis for suspecting legal wrongdoing."[13] Accordingly, Defendants' Motion to Suppress evidence arising out of this stop is **DENIED**.

### A. Overt Act 30: February 4, 2017 Stop

On February 14, 2025, the Court held an evidentiary hearing on the February 4, 2017 stop. New Orleans Police Department Sergeant Joseph Davis testified that on February 4, 2017, he was performing patrols in a marked unit with a recruit officer. He testified that he had a vague memory of the stop in question but that much of his testimony was informed by body camera footage that he reviewed prior to his testimony. Sergeant Davis testified that he observed a car with dark tinted windows parked in a parking spot under the overpass in the 1400 block of N. Claiborne St. at approximately 12:30 a.m. He also observed three individuals standing outside of the car. He testified that he was unsure whether the vehicle was occupied when he first observed it. He testified that it was a high crime area and that he was concerned about suspicious activity, such as drug dealing. He decided to investigate whether the car was occupied and whether the individuals outside of the car were

---

[13] *Arvizu*, 534 U.S. at 273.

interacting with anyone inside the car. He testified that the dark tint of the vehicle's windows was also a factor in initiating a stop. He testified that it is a violation of state law to have windows that are too tinted and that he could have stopped a driver for that violation. He thereafter pulled his vehicle in front of the parked car but did not initiate his vehicle's lights or sirens. Upon pulling in front of the vehicle, Sergeant Davis testified that he could see with the aid of a flashlight and his vehicle headlights that the car was occupied. At that point, he and his partner exited the vehicle and called out "Hands!" to the group. He testified that upon approaching the parked car, he smelled the odor of marijuana. Sergeant Davis and his partner handcuffed the individuals standing outside the car for their own safety. They then asked the occupants of the vehicle to exit the vehicle, and they were handcuffed as well.

The Court also reviewed Sergeant Davis's body worn camera footage of the encounter. The footage revealed that Sergeant Davis parked his patrol car behind a row of several vehicles in the parking lot but did not initiate his lights or siren. Upon exiting his vehicle, he yelled "Hands!" at the group standing outside of the vehicle and then repeatedly and forcefully instructed the group and the occupants of the vehicle to show them his hands. He approached the three young Black males standing outside of the car first. One of the men told Sergeant Davis that they were waiting for a party bus. Sergeant Davis explained that he initiated the stop because of complaints about drug use under the overpass. He instructed the men to move to a certain location where they were presumably contained by the other officer at the scene. He also suggested negative consequences would result if they dropped their hands. After containing the group standing outside the car, Sergeant Davis opened

the driver's door of the vehicle and shined his flashlight into the vehicle. He then ordered the driver to exit the vehicle and put his hands on the car. He told the vehicle's occupants that he "smelled weed." He then had the front passenger exit the car through the driver's door. The occupants admitted to possessing a small amount of marijuana.

There are two police reports corresponding to this incident. Sergeant Davis did not author either but approved both. The reports contain discrepancies regarding whether the car was parked or was parking at the time officers noticed it and at what point officers knew the vehicle was occupied. Further, neither report mentions the three men standing outside of the vehicle. Both reports include the fact that the vehicle in question had dark tinted windows. The reports indicate that the stop was a "suspicious person stop" but also that the officers observed some unnamed violation that triggered the stop.

"Because a seizure under the Fourth Amendment must be 'justified at its inception,' our first task is ordinarily to determine when the seizure occurred."[14] "[A] seizure occurs when an officer objectively manifests an intent to restrain the liberty of an individual through either use of physical force or a show of authority."[15] "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."[16] "When the police convey the message that compliance with their requests is required, an encounter is no longer consensual and reasonable."[17] Here, the Court finds that Sergeant Davis displayed a show of authority

---

[14] United States v. Flowers, 6 F.4th 651, 655 (5th Cir. 2021).
[15] United States v. Wright, 57 F.4th 524, 530–31 (5th Cir. 2023).
[16] Terry v. Ohio, 392 U.S. 1, 16 (1968).
[17] Fla. v. Bostick, 501 U.S. 429, 437 (1991).

sufficient to manifest an intent to seize Defendants and the other individuals outside of the vehicle when he ordered them to raise their hands. From that point, it was clear that their compliance with his instructions regarding where to stand and what to do was required. No reasonable person would have felt free to walk away at that point.[18]

Accordingly, the Court must now consider whether Sergeant Davis had reasonable suspicion to initiate the stop prior to the seizure. The Government argues that the stop should be justified by the illegal tint of the vehicle's window. The evidence has established that prior to the seizure, Sergeant Davis knew both that the vehicle had very dark tinted windows and that the vehicle was occupied. Contrary to Defendant's assertion of recent reliance on the justification of dark window tint, this Court notes that both police reports reference the dark tinted windows, and Sergeant Davis testified that it was a factor in the stop. Accordingly, the dark tint of the vehicle's windows alone was sufficient to justify a stop. The Court also notes that the dark tint of the windows added to Sergeant Davis's suspicions regarding other criminal activity. He was an experienced officer who observed a group loitering near a car with dark tinted windows in a high crime area late at night. Sergeant Davis testified that he was concerned about whether the individuals under the

---

[18] *See* United States v. Berry, 25 F. Supp. 3d 931, 944 (N.D. Tex. 2014) ("The detention of Williams occurred, and he was no longer free to leave, when Detective Martinez ordered Williams to keep his hands out of his pockets—while standing in a "bladed" stance with one hand on his holstered weapon—and informed Williams without asking his consent or telling him he could refuse consent, that he was going to be patted down.").

overpass were interacting with occupants in the vehicle, and he told the men standing outside of the vehicle that officers had received complaints about drug use under the overpass. Given the totality of the circumstances, Sergeant Davis had reasonable suspicion to initiate a stop. Accordingly, the Court finds that Sergeant Davis had "a particularized and objective basis for suspecting legal wrongdoing" prior to the seizure. Defendants' Motion to Suppress evidence arising out of this stop is **DENIED**.

## II. Bovia's Motion to Suppress

Defendant Tyrone Bovia brings Fourth Amendment challenges to a traffic stop relating to Overt Act 10 and a warrantless entry relating to Overt Act 18.

### A. Overt Act 10: February 2, 2016 Stop

On February 14, 2025, the Court held an evidentiary hearing on the February 2, 2016 stop. Officer Gary Kessel, a former Jefferson Parish Sheriff's Office officer, testified at the hearing. He asserted that he had no independent recollection of the stop, but he discussed his report with the Court. His report indicated that on February 2, 2016, at 1:00 a.m., he was patrolling the Sixth District in a marked SUV. The report stated that he observed a sedan traveling directly in front of him and noticed the front-seat passenger was not wearing a seatbelt. Kessel testified that because he was in an SUV, he could see down into the sedan that the seatbelt was not coming from the "B pillar" diagonally across the passenger. He thereafter activated his overhead lights and siren, and the vehicle pulled over into a parking lot. An additional officer arrived on the scene to assist, and the officers approached the vehicle. At that point, the

9

officers observed the front-seat passenger conceal something between the center console and the seat. Based on his experience in law enforcement, he believed this action to be an effort to conceal contraband. The officers asked the occupants to exit the vehicle, at which point they observed an extended magazine under the front passenger seat. Officers then conducted a search of the vehicle and discovered marijuana and firearms. Bovia pleaded guilty to possession of marijuana arising out of the stop. In 2021, Officer Kessel was terminated from the Jefferson Parish Sheriff's Office for conduct unbecoming of an officer unrelated to the stop at issue here.

The Court did not find Officer Kessel credible and found his explanation for initiating the stop at issue—of which he had no independent recollection—to be incredulous at best. This Court simply does not believe that Officer Kessel could have reliably observed—at night—that the front passenger of the vehicle in front of him was not wearing a seatbelt. Officer Kessel offered no other reasonable explanation for initiating the stop. Accordingly, the Court finds that there was not reasonable suspicion for initiating the February 2, 2016 stop, and it was, therefore, a violation of Defendant's Fourth Amendment rights.

The exclusionary rule "generally prohibits admission of evidence obtained 'during or as a direct result' of a search or seizure in violation of the Fourth Amendment."[19] However, "such evidence may be admissible if the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint."[20]

---

[19] Peavy v. WFAA-TV, Inc., 221 F.3d 158, 174 (5th Cir. 2000).
[20] *Id.*

10

"[T]he exclusionary rule's bar to admitting evidence only extends from the 'tree' to the 'fruit' if the fruit is sufficiently connected to the illegal tree."[21]

Here, the evidence obtained during the February 2, 2016 traffic stop is excluded from trial under the exclusionary rule. The Government argues, however, that the fact that Bovia pleaded guilty to possession of marijuana arising out of that stop should still be admissible at trial because the taint of the illegal stop does not extend to the guilty plea. In so arguing, the Government relies on cases discussing the exclusionary rule's effect on a later confession. The Court too finds these cases instructive.

The Supreme Court in *Brown v. Illinois* discussed relevant factors for a court to consider in determining whether a confession was "obtained by exploitation of an illegal arrest" and thus excluded under the exclusionary rule.[22] These factors include "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and the purpose and flagrancy of the official misconduct."[23] Similarly, the Fifth Circuit has considered these same factors in determining whether a consent to a search was a voluntary and independent act of free will such that it "may remedy the taint of a constitutional violation."[24] The Court finds it appropriate to consider these same factors here in determining whether Defendant's guilty plea broke the "causal chain" sufficient to refute the inference that the evidence was a product of the constitutional violation.

---

[21] United States v. Ibarra-Sanchez, 199 F.3d 753, 761 (5th Cir. 1999).
[22] Brown v. Illinois, 422 U.S. 590, 603–04 (1975).
[23] *Id.*
[24] United States v. Ansourian, 487 F. App'x 155, 157 (5th Cir. 2012).

11

Taking these factors into consideration, this Court holds that the taint of the illegal stop does not extend to Defendant's guilty plea. First, Defendant pleaded guilty to the charge of possession of marijuana more than seven months after the unconstitutional stop.[25] The Fifth Circuit has said that even "[a] few hours between the events . . . favors the government."[26]

Second, prior to his plea, Defendant was appointed counsel and engaged in discovery.[27] He entered his plea before a neutral judge, was advised of his rights, and indicated that he understood those rights.[28] There is no evidence that his plea was not knowingly and voluntarily entered. The Fifth Circuit has stated that "'[i]ntervening events of significance' include, for example, an appearance before a magistrate or consultation with an attorney."[29]

As to the third factor, the misconduct engaged in by Officer Kressel in pulling over the car in which Defendant was riding without reasonable suspicion does not rise to the level of flagrant as described in other cases.[30] In addition, courts often consider whether the police misconduct was intended to bring about a consent to search or a confession.[31] Here, the stop was not made for the purpose of eliciting the guilty plea at issue.

---

[25] Doc. 1154-5.
[26] United States v. Montgomery, 777 F.3d 269, 274 (5th Cir. 2015).
[27] *Id.*
[28] Doc. 1154-5.
[29] United States v. Hernandez, 670 F.3d 616, 622 (5th Cir. 2012).
[30] *See Montgomery*, 777 F.3d at 276.
[31] *Brown*, 422 U.S. at 605 (noting that the purpose of the arrest was investigatory and "detectives embarked upon this expedition for evidence in the hope that something might turn up"); *Ansourian*, 487 F. App'x at 158 (finding that "officers did not purposefully use that period of illegal detention to procure the defendant's consent to search the vehicles").

Accordingly, all three of the *Brown* factors weigh in favor of the Government. The Court finds that the guilty plea was an independent and voluntary act of free will that remedied the taint of the constitutional violation. Indeed, the Supreme Court has explained in other contexts that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process."[32] Accordingly, the taint of the illegal stop does not extend to exclude Defendant's guilty plea at trial. Defendant's Motion to Suppress the February 2, 2016 stop is **GRANTED IN PART**.

## B. Overt Act 18: July 18, 2016 Warrantless Entry into 1024 Tensas Drive

On February 14, 2025, the Court held an evidentiary hearing on the July 18, 2016 warrantless entry. Officer Kenneth Bonura, a former Jefferson Parish Sheriff's Officer, testified that on July 18, 2016, he and a partner were performing foot patrol of an apartment complex known for a high rate of drug and gun crimes. Officer Bonura testified that he had personally performed arrests in the area. While walking through the complex, the officers smelled burning marijuana and then observed a man smoking a marijuana cigar outside of an apartment door. Officer Bonura testified that when the man saw the officers, he appeared shocked and panicked, and attempted to gain access to the nearest apartment, 1024 Tensas Drive. The man struggled with the door but ultimately entered the apartment and locked the deadbolt. Officer Bonura testified that the man's reaction was atypical for individuals who were involved

---

[32] Tollett v. Henderson, 411 U.S. 258, 267 (1973).

in misdemeanor marijuana possession. His outsized reaction made officers concerned that there was more criminal activity afoot and that the man was possibly destroying evidence in the apartment. He testified that marijuana is susceptible to being destroyed. Officer Bonura also testified that he was concerned that the apartment the man entered may not have belonged to him. With these concerns in mind, the officers forced entry into the apartment. The officers did not enter the apartment but gave verbal commands to the occupants to stay where they were until backup arrived. While the officers were giving commands, one of the occupants of the apartment escaped out of a back window and over the fence. After back up arrived, officers removed and detained each of the individuals in the apartment and performed a protective sweep. During the protective sweep, officers observed guns and drugs in plain view. Officers then obtained a search warrant for the apartment.

Defendant Bovia alleges that the warrantless search of 1024 Tensas Drive was unconstitutional under the Fourth Amendment.[33] "Although a warrantless entry into a home is presumptively unreasonable, exigent circumstances may justify a warrantless entry."[34] The Fifth Circuit has set forth five factors to aid in

---

[33] The Government raised the issue of whether Bovia has standing to raise this challenge. The evidence revealed that Bovia told officers he slept at the apartment, Bovia's mother told officers that Bovia lived at 1024 Tensas Drive from "time to time," and officers observed male clothing at the residence. A defendant asserting a Fourth Amendment violation has the burden to show "a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." United States v. Salemi-Nicoloso, 353 F. Supp. 3d 527, 536 (N.D. Miss. 2018). "[A]n overnight guest may claim the protection of the Fourth Amendment, but a visitor merely legitimately on the premises cannot." United States v. Rios-Davila, 530 F. App'x 344, 347 (5th Cir. 2013). Accordingly, the Court finds that Bovia has shown that he has standing to bring these challenges.

[34] United States v. Howard, 106 F.3d 70, 73 (5th Cir. 1997).

determining whether exigent circumstances justify a warrantless entry: (1) the degree of urgency involved and amount of time necessary to obtain a warrant; (2) [the] reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.[35]

This Court finds that the warrantless entry of 1024 Tensas Drive was reasonable under the Fourth Amendment. Officer Bonura credibly testified that he and another officer forced entry into the home because of their concerns about drug crimes occurring in the residence, the destruction of evidence of those crimes, and the safety of the residents of the apartment and themselves. They observed a man involved in drug crimes flee into an apartment, and they were unaware whether he knew the people in the apartment, how many people were in the apartment, or if they were armed. The man that fled into the apartment was certainly aware of the police's presence and likely informed the other occupants of the apartment of their presence as well. Evidence of drug crimes could easily have been destroyed while officers waited for a search warrant. Accordingly, this Court finds that exigent circumstances justified the warrantless entry of 1024 Tensas Drive. Further, the Court notes that subsequent to the warrantless entry, officers obtained a search warrant. Therefore, the search of 1024 Tensas Drive and the seizure of firearms and drugs from the home was performed pursuant to a search warrant—the

---

[35] *Id.*

validity of which Defendant has not challenged. Accordingly, Defendant's Motion to Suppress as to 1024 Tensas Drive is **DENIED**.

## CONCLUSION

For the foregoing reasons, Terran Williams and Javonta Doleman's Motion to Suppress is **DENIED**, and Tyrone Bovia's Motion to Suppress is **GRANTED IN PART** and **DENIED IN PART**.

New Orleans, Louisiana this 5th day of March, 2025.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**