UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                         **CRIMINAL ACTION**

**VERSUS**                                                           **NO: 19-204**

**TERRAN WILLIAMS, JAVONTA DOLEMAN,**
**TYRONE BOVIA**                                               **SECTION "H"**

### ORDER AND REASONS

Before the Court are Defendants' Terran Williams, Javonta Doleman, and Tyrone Bovia's Motions in Limine (Docs. 1297, 1301, 1303, 1304, 1305, 1311, 1314, 1320). For the following reasons, Record Document 1297 is **DEFERRED**; Record Documents 1301, 1314, and 1320 are **GRANTED IN PART**; and Record Documents 1303, 1304, 1305, and 1311 are **DENIED**.

### BACKGROUND

This matter arises out of alleged gang activity by a criminal organization known as the "Byrd Gang" in and around New Orleans, Louisiana, between January 2014 and August 2021. Twenty-one defendants were initially charged in this matter and only Terran Williams, Javonta Doleman, and Tyrone Bovia remain for trial. Each Defendant is charged with a Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy, a drug trafficking conspiracy, a firearms conspiracy, murder in aid of racketeering, and causing death

1

through the use of a firearm. The RICO charge lists 50 Overt Acts, including instances of drug distribution, firearm possession, arrests, shootings, and murders. The Government alleges that the Byrd Gang controlled the drug trade in a certain area of the city through various acts of violence.

Defendants have collectively and individually filed several Motions in Limine asking the Court to limit or exclude certain evidence from trial.[1] The Court will address eight of those Motions here and will consider each category of evidence at issue in turn.

## LAW AND ANALYSIS

### A. Overview or Summary Testimony (Doc. 1297)

Defendants move for an order precluding the Government from offering overview and summary testimony. The parties appear to agree on the law governing this issue. Law enforcement witnesses may testify as to their personal knowledge and the specific investigatory activity that they undertook. The Court will not permit witnesses to summarize live testimony, give testimony akin to a closing argument, or backdoor "highly inculpatory hearsay via an explaining-the-investigation rationale."[2] That said, Defendants'

---

[1] Although most of the Motions were filed individually on behalf of one Defendant, each of the Defendants moved to adopt all the Motions in Limine. Docs. 1309, 1322, and 1323.

[2] United States v. Fullwood, 342 F.3d 409, 414 (5th Cir. 2003); United States v. Sharp, 6 F.4th 573, 582 (5th Cir. 2021) (citations omitted).

objection is context-specific, and this Court declines to make any rulings as to specific lines of questioning pre-trial. Accordingly, this Motion is **DEFERRED**.

### B. Gruesome Photographs (Doc. 1301, 1320)

Next, Defendants move to exclude crime scene photographs that are inflammatory and irrelevant because of their duplicative, excessive, or gruesome nature. This case involves several murders both as overt acts and separate counts. The Fifth Circuit has "allowed shocking and gruesome photographs to be shown to the jury in murder cases so long as those photos had a nontrivial probative value."[3] In response to Defendants' Motion, the Government has culled the selection of photographs they intend to introduce to the jury to eliminate cumulative photos. The Court finds that the remaining photographs have sufficient probative value to outweigh their prejudice with one exception. The Court excludes photograph 12 in Exhibit 14 of Kent Franklin's body. The Court finds that the prejudice outweighs any probative value of this image. Accordingly, this Motion is **GRANTED IN PART**.

### C. Firearms (Doc. 1301, 1320)

Defendants move to limit the number of firearms that the Government admits at trial, noting that there are more than 30 firearms at issue in this case and many are unrelated to the Overt Acts or Defendants. They argue that the actual guns—especially ones that were neither used nor possessed by

---

[3] United States v. Perry, 35 F.4th 293, 325 (5th Cir. 2022).

Defendants—have limited probative value but "tables full of firearms will be highly prejudicial."[4]

The Government argues that the specific violent acts that it plans to introduce at trial are relevant and not being introduced simply to increase the number of guns on the table. It argues that the events that do not involve the Defendants are relevant to showing the overall structure and operation of the Byrd Gang. It also points out that under the principles of conspirator liability, Defendants can be liable for the crimes of their co-conspirators. The Court agrees that the Government is permitted to introduce evidence of other crimes with which Defendants were not directly involved, however, the Government has not explained why every physical firearm involved therein must be introduced in order to prove those crimes. The Court agrees with Defendants that the prejudice of presenting more than 30 guns to the jury outweighs the limited probative value of introducing into evidence firearms with which Defendants are not connected. Accordingly, this Motion is **GRANTED**, and the Government shall be limited to the introduction of physical firearms that were allegedly use or possessed by Defendants or involved in Overt Acts to which Defendants are connected. Photographs of all other firearms will be admissible and are sufficiently probative without undue prejudice.

### D. <u>Unauthenticated Social Media (Docs. 1303)</u>

Defendants move to exclude hundreds of exhibits that are screenshots/screengrabs of social media posts and photographs. Defendants complain that these exhibits do not contain any meta-data, including the date

---

[4] Doc. 1320.

the image was created, the IP address and subscriber information associated with the account, or the date the image was allegedly uploaded to social media. They suggest that social media evidence cannot be introduced without a valid certificate of authenticity from a records custodian, such as Twitter or Instagram. Defendants do not, however, cite to any case making such a rule.

Pursuant to Federal Rule of Evidence 901, to "satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The "standard for authentication is not a burdensome one," and Rule 901(b) sets forth a non-exhaustive list of appropriate methods of authentication.[5] Defendants do not explain why social media evidence cannot be authenticated under any of the methods suggested under Rule 901. Indeed, the Fifth Circuit has held that Facebook messages were properly authenticated where a witness testified that she had seen the author use Facebook, she recognized his Facebook account, and the Facebook messages matched the author's manner of communicating.[6] Accordingly, Defendants' Motion is

---

[5] United States v. Barnes, 803 F.3d 209, 217 (5th Cir. 2015).
[6] *Id.*

**DENIED**, and the authentication of each screenshot at issue will be determined by the evidence presented at trial in compliance with Rule 901.

### E. Screen Grab of Instagram Live (Doc. 1304)

Similarly, Defendant Williams moves to exclude screenshots of social media live stream videos that show him holding guns and drugs, arguing that they cannot be authenticated and violate the rule of completeness.

As discussed above, Rule 901, requires only that a "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The Government contends that the law enforcement officer who took the screenshot and pictures of Williams's Instagram Live video will testify that he had interacted with Williams, recognized him on the video, and took the screenshots. Rule 901 advises that testimony of a witness with knowledge satisfies the authentication requirements. Further, Defendant has not identified what other portions of the video "in fairness ought to be considered at the same time" pursuant to Federal Rule of Evidence 106. Accordingly, this Motion is **DENIED**.

### F. Other Acts Evidence (Doc. 1305)

Defendant Williams contend that the Government's exhibit list contains "Other Act" evidence that was not previously disclosed in the Government's 404(b) notice. Specifically, the Government seeks to introduce a screenshot from a Real Time Crime Camera showing Mr. Williams possessing a rifle in broad daylight while standing on a sidewalk at the corner of N. Rocheblave and

St. Anthony Street in New Orleans on August 26, 2020. Defendant moves to exclude that evidence.

The Government responds that the evidence relates to Overt Act 48 and will support the testimony of law enforcement as to their investigation that led up to that incident. Accordingly, this evidence is intrinsic to the crimes charged because it tells part of the story of Overt Act 48. Defendant's Motion is **DENIED**.

### G. Use of the Word "Gang" (Doc. 1311)

Defendants move the Court to exclude or limit references to the Byrd Gang as a "gang" based on the substantial risk of unfair prejudice attached to the word "gang." As the Government points out, however, Defendants and the cooperating co-defendants refer to themselves as a gang and identify as gang members. Accordingly, the Court will not prevent the Government from using this term. That said, the Court will consider the inclusion of a jury instruction that the term "gang" is not dispositive of the existence of an enterprise within the meaning of the RICO statute and would entertain a proposed instruction on this point. The Motion is **DENIED**.

### H. T-III Calls of R.L. (Doc. 1314)

Finally, Defendant Tyrone Bovia moves to exclude Exhibit 118, the recordings of three wiretap phone calls—one between R.L. and Jonathan Young; one between R.L. and a third person; and one between R.L and Tyrone Bovia. Each call discusses Overt Act 44. Defendant argues that the calls should

be excluded because they are inadmissible hearsay as they are neither party admissions nor made in furtherance of the alleged conspiracy.

The Government responds that the calls relate to Overt Act 44 and are probative to the fact that Bovia was shot and lied to the police about the circumstances. It contends that R.L will testify at trial regarding the calls and identify himself as making the statements. The Government does not, however, present any argument regarding how the call between R.L. and Johnathan Young and the call between R.L. and an unnamed person are not hearsay. Accordingly, these conversations are inadmissible unless the foundation for a hearsay exception is laid at trial. The call between R.L. and Tyrone Bovia, on the other hand, is not hearsay because it is a statement against a party opponent. Accordingly, this Motion is **GRANTED IN PART**.

## CONCLUSION

For the foregoing reasons, Record Document 1297 is **DEFERRED**; Record Documents 1301, 1314, and 1320 are **GRANTED IN PART** as outlined herein; and Record Documents 1303, 1304, 1305, and 1311 are **DENIED**.

New Orleans, Louisiana this 27th day of March, 2025.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**