UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**  **CRIMINAL ACTION**

**VERSUS**  **NO: 19-204**

**TERRAN WILLIAMS, JAVONTA DOLEMAN,**
**TYRONE BOVIA**  **SECTION "H"**

## ORDER AND REASONS

Before the Court are Defendants' Terran Williams, Javonta Doleman, and Tyrone Bovia's Motions in Limine (Docs. 1300, 1302, 1321, and 1354). For the following reasons, Record Document 1300 is **GRANTED IN PART** and **DEFERRED IN PART**; Record Document 1321 is **GRANTED IN PART**, **DEFERRED IN PART**, and **DENIED IN PART**; Record Document 1302 is **DEFERRED**; and Record Document 1354 is **DENIED.**

## BACKGROUND

This matter arises out of alleged gang activity by a criminal organization known as the "Byrd Gang" in and around New Orleans, Louisiana, between January 2014 and August 2021. Twenty-one defendants were initially charged in this matter and only Terran Williams, Javonta Doleman, and Tyrone Bovia remain for trial. Each Defendant is charged with a Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy, a drug trafficking conspiracy,

1

a firearms conspiracy, murder in aid of racketeering, and causing death through the use of a firearm. The RICO charge lists 50 Overt Acts, including instances of drug distribution, firearm possession, arrests, shootings, and murders. The Government alleges that the Byrd Gang controlled the drug trade in a certain area of the city through various acts of violence.

Defendants have collectively and individually filed several Motions in Limine asking the Court to limit or exclude certain evidence from trial.[1] The Court will address four of those Motions here and will consider each category of evidence at issue in turn.

## LAW AND ANALYSIS

### A. Rap Music Videos (Docs. 1300, 1321)

Defendants move to exclude Government's proposed Exhibit 139, which includes six music videos of rap songs that were performed or produced by alleged members of the Ghost Gang or Byrd Gang.[2] Defendants argue that the videos are irrelevant and prejudicial where they were not performed by the Defendants and portray Defendants in a violent light.

The Fifth Circuit has advised that as to the admissibility of rap videos, "[t]he general conclusion from courts that have considered this type of evidence is that explicit rap videos are probative and outweigh substantial prejudice when the defendant performs the song, describes events closely related to the

---

[1] Although most of the Motions were filed individually on behalf of one Defendant, each of the Defendants moved to adopt all the Motions in Limine. Docs. 1309, 1322, and 1323.

[2] The Exhibit also includes a still image but no argument was put forth for its exclusion.

2

crime charged, and the evidence is not cumulative."[3] Here, Defendants neither perform the songs nor do they describe events closely related to the crimes charged. That said, the Fifth Circuit has not held that rap videos may *only* be admissible if they meet these requirements. Here, the Government does not offer the videos for the truth of the lyrics. Instead, it argues that the videos are probative because they show Defendants' and the cooperating witnesses' involvement in and association with the Byrd Gang. The videos also include lyrics celebrating the gang activity and taunting its rivals. Indeed, the Second Superseding Indictment alleges, and the Government intends to show, that the Byrd Gang used music videos featuring its members to highlight their members' affiliation with the gang and to intimidate and taunt the gang's rivals, including the Ghost Gang. Further, two of the videos show that the victims of Defendants' crimes were associated with the Ghost Gang—a fact that is relevant to the RICO charges.

The Court finds the videos probative for these purposes. However, there are many portions of the videos and the lyrics in which the Court finds that the prejudice outweighs the probative value. The lyrics are often violent, sexual, misogynistic, and expletive-filled, and may refer to criminal activity not at issue in this case. That said, the admissibility of this evidence must be done through a witness with personal knowledge of the lyrics and why, how,

---

[3] United States v. Perry, 35 F.4th 293, 326–27 (5th Cir. 2022).

and when the song was produced. Assuming this threshold is met, admissibility is further limited as follows.

Exhibit 139.1 "Goin In"—Only the first 20 seconds of this video are admissible and should be played without sound.

Exhibit 139.2 "My Team Winning"—The Government must edit this video to include only those portions that are relevant, probative, and for which the Government can lay a foundation. The Court will review the Government's selections before ultimately determining admissibility.

Exhibit 139.3 "Swinging with da Stick"— The Government must edit this video to include only those portions that are relevant, probative, not cumulative, and for which the Government can lay a foundation. The Court will review the Government's selections before ultimately determining admissibility.

Exhibit 139.4 "Man Down"—The Court finds the lyrics of this song to be overly prejudicial and not probative, and therefore holds that the sound on the video is inadmissible. Further, the Government must edit this video to include only those portions that are relevant, probative, not cumulative, and for which the Government can lay a foundation. The Court will review the Government's selections before ultimately determining admissibility.

Exhibit 139.5 "Drillz"—The Court finds the presence of children in this video to be unduly prejudicial. The Government shall edit the video to remove the images of children. The Government must also edit this video to include only those portions that are relevant, probative, not cumulative, and for which

the Government can lay a foundation. The Court will review the Government's selections before ultimately determining admissibility.

Exhibit 139.6 "Kingg Tokyo F*ck Sh*t"— The Court finds the lyrics of this song to be overly prejudicial and not probative, and therefore holds that the sound on the video is inadmissible. The Government must also edit this video to include only those portions that are relevant, probative, not cumulative, and for which the Government can lay a foundation. The Court will review the Government's selections before ultimately determining admissibility.

To the extent that the Government's edited versions of the videos include any lyrics suggestive of criminal activity, the Court also finds it appropriate to provide the limiting instruction suggested by the Government:

> The following music video is not being offered to prove the truth of any specific crime mentioned by any of the performers. If any of you find rap music personally distasteful, you should not allow that personal distaste for the music genre to prejudice you against the defendants in any way. They are cloaked in a presumption of innocent unless and until the government proves their guilt beyond a reasonable doubt and you should not convict them merely because they may have appeared in a music video.

Accordingly, Defendants' Motion is **GRANTED IN PART** and **DEFERRED IN PART.**

### B. Bovia's Instagram Live Video (Doc. 1302)

Defendant Tyrone Bovia moves to exclude the Government's proposed Exhibit 164, a 3 minute 13 second Instagram Live Video posted by Tyrone Bovia in which he appears to possess an automatic firearm with an extended magazine. Defendant argues that the video is irrelevant and not intrinsic to

the charged offenses. The video took place during the conspiracy on May 12, 2019, but Defendant argues that there is no evidence that the firearm in the video is linked to a specific crime or Overt Act.

The Government responds that the video is relevant for several reasons. First, it will corroborate the testimony of cooperating witnesses that the Byrd Gang used social media to intimidate and taunt its rivals. Second, the video supports the allegation that the Byrd Gang maintained a collection of firearms for use in criminal activity. Finally, the video will corroborate details of Bovia's relationship to other defendants and his presence at the location where it was filmed. The Court cannot make a determination on the relevance of this evidence without the context of trial. Accordingly, this Motion is **DEFERRED**, and the Government should approach the bench before attempting to introduce the Instagram Live video of Bovia.

### C. Doleman's Incomplete Tweets (Doc. 1354)

Defendant Javonta Doleman moves to exclude the introduction of certain tweets from his Twitter account that were directed at Wynston Jackson. Defendant contends that the Government seeks to introduce purported screenshots of Defendant's responses to tweets directed at him by Wynston Jackson but have not produced the corresponding Wynston Jackson tweets that are necessary to understand any purported exchange between Doleman and Jackson. The Government responds that Doleman's tweets to Jackson are being offered only to show that Doleman interacted with Jackson and knew he was associated with a rival gang. It argues, and this Court agrees, that "there is nothing so inflammatory about what Doleman is saying in response to make it 'unfair' to show the Doleman tweets responding to Jackson without showing

6

what Jackson had tweeted."[4] Defendant has failed to "demonstrate with particularity the unfairness in the selective admission" of only his side of the conversation.[5] Accordingly, this Motion is **DENIED**.

### D. Tweets of Rap Lyrics (Doc. 1321)

Finally, Defendant Javonta Doleman moves to exclude the introduction of tweets of rap lyrics purportedly posted by him to his Twitter account. Doleman argues that these lyrics were not authored by him and were posted at times that have no temporal proximity to his crimes. The Government argues that the fact that these posts are song lyrics is not dispositive. Rather, they are adopted admissions of a party opponent, and the fact that Doleman

---

[4] Doc. 1378.
[5] United States v. Branch, 91 F.3d 699, 729 (5th Cir. 1996).

selected these specific song lyrics to post to his account is relevant to his state of mind.

The Government has relayed that it is particularly focused on the following lyrics:

1. "N*ggas they know better not to walk up on us, walk up you a f*ckin goner" posted on September 10, 2016.

2. "I'm coming sit on your crib if you the otherside" posted on September 5, 2016.

3. "N*ggas in the house cause they scared we pop out a lot" posted on August 27, 2016.

4. "Run up on you now the team 1 up!" and "Run up on me rounds getting sent" posted on August 24, 2016.

Doleman is charged with murdering two members of the rival Ghost Gang on January 31, 2017. Accordingly, the Court agrees with the Government that his threatening and violent tweets from just months earlier are relevant to his state of mind. The fact that the posts are song lyrics does not undercut this relevance. Courts have found that a poster can adopt lyrics as his own statement, especially where, as here, the poster "did not use quotation marks, attribute the lyric to the artist, or provide other signals to indicate to his [social

media] audience that someone else authored the words in his post."[6] Accordingly, Defendant's Motion to exclude these posts is **DENIED**.

## CONCLUSION

For the foregoing reasons, Record Document 1300 is **GRANTED IN PART** and **DEFERRED IN PART**; Record Document 1321 is **GRANTED IN PART**, **DEFERRED IN PART**, and **DENIED IN PART**; Record Document 1302 is **DEFERRED**; and Record Document 1354 is **DENIED.**

New Orleans, Louisiana this 28th day of March, 2025.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[6] United States v. Recio, 884 F.3d 230, 235 (4th Cir. 2018).